FILED

2008 Jul-30  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| SOUTHERN MASONRY CONSTRUCTION, L.L.C., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SPEEGLE CONSTRUCTION, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

Case No. 5:08-cv-00723-CLS

## MEMORANDUM OPINION

This action is before the court on a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue under the doctrine of *forum non conveniens* brought by defendant, Speegle Construction, Inc. ("Speegle").[1] Plaintiff, Southern Masonry Construction, L.L.C. ("SMC"), opposes the motion.  For the reasons stated herein, defendant's motion to dismiss for lack of personal jurisdiction is due to be GRANTED.[2]

---

[1] *See* doc. no. 2 (motion to dismiss or, in the alternative, to transfer venue).

[2] Because the motion to dismiss for lack of personal jurisdiction is due to be granted, this court will not consider the merits of defendant's alternative motion to transfer venue.  The personal jurisdiction issue must be addressed first because this court cannot rule on defendant's motion to transfer venue if personal jurisdiction is lacking.  *C.f. Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (holding that a federal court confronting both Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) motions should consider the personal jurisdiction issue first because a court without personal jurisdiction is powerless to take further action).

## I. FACTS[3]

Plaintiff SMC is a corporation located in and organized under the laws of Alabama, and it is engaged in the business of performing masonry work.[4]  Plaintiff initiated the present action by filing a complaint in the Circuit Court of Madison County, Alabama, on March 24, 2008.  Defendant timely removed the case to this court, basing federal jurisdiction solely on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Plaintiff and defendant were the parties to a failed business relationship regarding a construction project located in Crestview, Florida, and this action arises out of plaintiff's claims for breach of contract, work and labor done, open account, and unjust enrichment resulting from masonry work that was allegedly completed by plaintiff prior to the disintegration of the parties' contract negotiations.[5]

Defendant is a Florida corporation with its principal place of business in Florida.[6]  It does not maintain an office in Alabama, have employees in Alabama, own property in Alabama, or have an agent in Alabama.  Furthermore, defendant is not licensed by Alabama's Secretary of State,[7] and it has not conducted any business in

---

[3]As it must on a motion to dismiss for lack of personal jurisdiction, this court has construed all reasonable factual inferences in plaintiff's favor.  *See Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

[4]*See* doc. no. 1 (notice of removal; plaintiff's state court complaint) at ¶¶ 2, 5.

[5]*Id.* at ¶¶ 4-22.

[6]*See* doc. no. 2, exhibit A (affidavit of Troy Speegle) at ¶ 4.

[7]"A foreign corporation may not transact business in [Alabama] until it obtains a certificate of authority from the Secretary of State."  Ala. Code 1975 § 10-2B-15.01(a).

2

this State since 2003.[8]

The parties' relationship began when plaintiff submitted a "bid" to defendant, by the terms of which plaintiff sought to be hired as a subcontractor for the performance of masonry work related to the construction of Crestwood Elementary School in Crestwood, Florida.[9]   Defendant served as general contractor on the construction project.  Plaintiff delivered its bid *via* a facsimile transmission from its Huntsville, Alabama office to defendant's headquarters in Niceville, Florida, on or about August 15, 2007.[10]   Defendant did not have any contact or business dealings with plaintiff prior to plaintiff's submission of this bid.

Defendant responded to plaintiff's solicitation by means of a facsimile transmission on August 21, 2007, in which defendant memorialized its intent to engage plaintiff as a masonry subcontractor on the Crestview Elementary School project.[11]   Defendant's August 21, 2007 fax reads, in relevant part, as follows:

> This is to advise you that we plan to issue a subcontract on the Crestview Elementary School project in accordance with the Contract Documents, which include drawings as prepared by Heffernan Holland and Moran Architecture, P.A., dated June 27, 2007, Specifications and Addendum No. 1-8.
>
> Since time is of the essence and in order to expedite product approval,

---

[8]Doc. no. 2, exhibit A at 5.  *See also* doc. no. 6-2 (second affidavit of Troy Speegle) at ¶ 5.

[9]*Id.* at ¶¶ 5-6.

[10]*See id.*

[11]*Id.* at ¶ 6.  *See also* doc. no. 5, exhibit F (letter of intent from Speegle).

please prepare and send to Speegle Construction, Inc., eight (8) copies
of the submittals [sic] which pertain to your scope of work, as shown
and required in the specifications.  Also, please provide a letter of intent
from your bonding company.

Thank you for your cooperation.  We look forward to working with your
company on this project.[12]

Within a matter of days after receiving this letter, plaintiff "mobilized" its work force, and began performing masonry work on the Crestview Elementary School project.[13]   Significantly, in view of subsequent events, at the time plaintiff commenced work in Florida, the parties had not executed a written subcontract agreement.

Over the course of the following two months, the parties engaged in fruitless negotiations regarding the proposed terms of an agreement.[14]  None of defendant's officers, agents, or employees traveled to Alabama to meet with representatives of the plaintiff,[15] and the only meetings between representatives of the parties occurred in Florida.[16]   The parties' agents otherwise communicated with one another by telephone, facsimile, or U.S. mail.  Despite their efforts, the parties were unable to reach a mutually satisfactory subcontract agreement, and plaintiff ceased working on

---

[12]*See* doc. no. 5, exhibit F (letter of intent from Speegle).

[13]Doc. no. 1 (notice of removal; plaintiff's state court complaint) at ¶¶ 7-10.

[14]*Id.* at ¶¶ 10-12.

[15]*See* doc. no. 2, exhibit A (affidavit of Troy Speegle) at ¶ 6.

[16]*Id.*

the Crestview Elementary School project on October 3, 2007.[17]

Plaintiff alleges that defendant refuses to compensate plaintiff "for the work, labor, services, and material it provided for the project, and for the improvements to the real property upon which the project was located."[18]  Without addressing the merits of plaintiff's claims, defendant argues that personal jurisdiction is lacking.

## II.  DISCUSSION

Where a district court decides the presence or absence of personal jurisdiction without an evidentiary hearing, it is the plaintiff's burden to establish a *prima facie* case of jurisdiction over a nonresident defendant.[19]  *See*, *e.g.*, *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).  "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."  *Stubbs*, 447 F.3d at 1360 (citation omitted).  In considering the adequacy of a plaintiff's allegations of fact, district courts accept as true all facts alleged in the complaint, to the extent they are uncontroverted by a defendant's affidavits.  *See Carillo*, 115 F.3d at 1542.  Where a plaintiff pleads sufficient material

---

[17]*See* doc. no. 1 (notice of removal; plaintiff's state court complaint) at ¶ 13.

[18]*Id.* at ¶ 14.

[19]An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary, but not mandatory.  *See*, *e.g.*, *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Given the parties' failure to request a hearing, the court declines to hold one *sua sponte*.

facts to show a basis for personal jurisdiction, and a defendant then submits affidavits controverting those allegations, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier*, 288 F.3d at 1269. If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, then all reasonable inferences must be construed in the plaintiff's favor. *See id.*

Due process authorizes the exercise of personal jurisdiction over a nonresident defendant when "(1) the nonresident defendant has purposefully established minimum contacts with the forum; [and] (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Carrillo*, 115 F.3d at 1542 (citation omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (same). Alabama's long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent allowed by the United States Constitution, and the traditional two-step personal jurisdiction inquiry of assessing the propriety of jurisdiction under the forum state's long-arm statute, and then determining whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment, collapses into a single step in Alabama. *See, e.g., Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (observing

that in Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible"); *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1060 (S.D. Ala. 2007) ("In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment."); *see also Ex parte Unitrin, Inc.*, 920 So.2d 557, 560 (Ala. 2005) ("Jurisdiction is obtained over out-of-state defendants pursuant to the 'long-arm' rule, Ala. R. Civ. P. 4.2(a)(2)(A)-(I).").

"Furthermore, it is important to remember that *the conduct at issue is that of the defendants*.  No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc*., 207 F.3d 1351, 1356 (11th Cir. 2000) (emphasis supplied) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Therefore, this court "must determine what these defendants did to purposefully avail themselves of the benefits of doing business in Alabama such that the notions of reasonableness and fairness are not offended by requiring them to defend themselves in an Alabama court." *Id.*

The minimum contacts analysis varies, depending upon whether the type of personal jurisdiction being asserted is "general" or "specific."  Indeed, facts

7

supporting "[p]ersonal jurisdiction may be *general*, which arise from the party's contacts with the forum state that are *unrelated to the claim*, *or specific*, which arise from the party's contacts with the forum state that *are related to the claim*." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002) (emphasis supplied). Here, the parties have raised arguments that implicate both general and specific personal jurisdiction.

**A.      General Jurisdiction**

"General personal jurisdiction arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1241 (S.D. Ala. 2006); *see also Sloss*, 488 F.3d at 925 n.3 ("general jurisdiction . . . can only be exercised if the defendant has 'continuous and systematic' contacts with the forum"); *Nippon Credit*, 291 F.3d at 747 (similar). "General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated." *Stubbs*, 447 F.3d at 1360 n.3.

Plaintiff argues that defendant's contacts with the State of Alabama are more than sufficient to establish the "minimum contacts" necessary for due process purposes because defendant "does business in Alabama, solicits business in Alabama, and advertises its ability and availability to perform work in Alabama."[20]

---

[20]Doc. no. 5 (plaintiff's response to defendant's motion to dismiss or, in the alternative, to

Defendant, however, has not transacted any business in the State of Alabama since 2003 — four years before its relationship with plaintiff began.[21] Prior to 2003, defendant conducted business only sporadically in Alabama. From 1998 - 2001, for example, defendant performed services for the City of Elba, Alabama, but thereafter had no further business dealings with the city.[22] Defendant also was awarded a "federal contract" in 2001, "for services to be performed at Fort Rucker, Alabama."[23] Upon accepting that contract, it was necessary for defendant to obtain a license from the Alabama Secretary of State to transact business within the State.[24] Defendant's business license expired in 2003, and has not been renewed.[25]

On January 1, 2002, the sole ownership of defendant was transferred from James T. Speegle to his son, Troy Speegle. The younger Speegle also became president of defendant at that time.[26] Since that transfer of ownership, defendant has conducted business within the State of Florida, with the exception of performing work on a "single project in Fort Benning, Georgia."[27]

---

transfer venue) at 3-4.

[21]*See* doc. no. 6-2 (second affidavit of Troy Speegle) at ¶ 5.

[22]*See* doc. no. 6-2 (second affidavit of Troy Speegle) at ¶ 3; doc. no. 5, exhibit A (affidavit of James E. Grimes, Mayor of the City of Elba, Alabama) at ¶ 3.

[23]Doc. no. 6-2 (second affidavit of Troy Speegle) at ¶ 4.

[24]*Id.*

[25]*Id.*

[26]*Id.* at ¶¶ 2-3.

[27]*Id.* at ¶ 6.

Plaintiff argues that defendant's past history of conducting business in Alabama establishes the requisite "continuous and systematic" contacts necessary for plaintiff to demonstrate that this court has general personal jurisdiction over defendant. The court disagrees. Plaintiff has not cited any legal authority in support of its argument that a defendant's past business dealings in Alabama have exposed that defendant, *in perpetuity*, to personal jurisdiction in Alabama courts.[28] In light of this omission, the court will not undertake to articulate and evaluate arguments plaintiff could have made, but elected not to make, in opposition to defendant's motion to dismiss. *See*, *e.g.*, *Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it").

---

[28]Plaintiff directs this court to three Alabama cases in support of its argument that "[w]hether or not a business entity such as [defendant] does business within a state such as Alabama has often been the dispositive issue for determining if personal jurisdiction exists." Doc. no. 5 (plaintiff's response to defendant's motion to dismiss or, in the alternative, to transfer venue) at 3. Each of the holdings of the cases cited by plaintiff, however, are premised on the fact that, at the time of the events which gave rise to the litigation at issue, the defendant was contemporaneously doing business in Alabama. *See Ex parte Unitrin, Inc.*, 920 So. 2d 557 (Ala. 2005); *Ex parte United Insurance Companies, Inc.*, 936 So. 2d 1049, 1055 (Ala. 2006); *Ex parte Builders and Contractors Association of Mississippi Self-Insurer's Fund*, 2007 WL 2460102 (Ala. Civ. App. August 31, 2007). Such is not the case here, where defendant stopped doing business in Alabama in 2003. The flaw in plaintiff's argument is that defendant *did* transact business in Alabama at one time, but that it does not *do* business here any longer. Further, neither *Ex parte United Insurance Companies, Inc.* nor *Ex parte Builders and Contractors Association of Mississippi Self-Insurer's Fund* provide any analysis whatsoever regarding the application of the "doing business in Alabama" test in a general jurisdiction scenario.

Moreover, and contrary to plaintiff's stagnant view of the "continuous and systematic" standard, this court is of the opinion that "personal jurisdiction is a fluid concept, not a static one." *Potts v. Dyncorp Intern., LLC*, 465 F. Supp. 2d 1254, 1259 (M.D. Ala. 2006). Defendant's past business activities in Alabama are no longer relevant or "continuous" for purposes of establishing general jurisdiction over this defendant, especially when it is clear that defendant has not conducted business in Alabama since 2003, four years before its relationship with plaintiff began. *See id.* at 1258-60 (holding that an Alabama court lacked personal jurisdiction over a defendant who, at one time, maintained extensive contacts with Alabama, but who had only "sporadic" contacts with Alabama in the five years prior to the lawsuit at hand, because the relevant, recent contacts were not "continuous and systematic").

In an effort to demonstrate that defendant presently does business in Alabama, plaintiff also makes much of the fact that defendant is regularly awarded "federal" contracts by the Mobile District of the U.S. Army Corps of Engineers.[29] However, those contracts are performed by defendant solely within the State of Florida.[30] Plaintiff argues that, because defendant regularly accepts these contracts, issued from an office in Mobile, Alabama, defendant maintains the requisite "continuous and

---

[29]Doc. no. 6-2 (second affidavit of Troy Speegle) at ¶ 5. This court takes judicial notice that the Mobile District of the Army Corps of Engineers is comprised of areas located in Mississippi, Alabama, Florida, Tennessee, and Georgia as well as parts of Central and South America.

[30]*Id.*

systematic" contacts with Alabama.  Contrary to plaintiff's position, the fact that the

contracts are issued from an office in Mobile, Alabama is not sufficient, standing

alone, to show that defendant maintains the minimum contacts with Alabama

necessary to establish general jurisdiction over this defendant, especially in light of

the maxim that

> the nexus between the defendant and the forum state must arise out of
> "an action of the defendant that was purposefully directed toward the
> forum State." *Elliott v. Van Kleef*, 830 So.2d 726 at 731 (Ala. 2002)
> (quoting *Asahi Metal Industry Co., Ltd. v. Superior Court of California*,
> 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).  This
> purposeful-availment requirement assures that a defendant will not be
> haled into a jurisdiction as a result of "the unilateral activity of another
> person or a third person." *Elliott*, 830 So.2d at 731 (quoting *Burger
> King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d
> 528 (1985)).

*Ex parte United Insurance Companies, Inc.*, 936 So.2d 1049, 1053 (Ala. 2006)

(internal brackets omitted).  In that regard, there is no evidence indicating that

defendant purposefully directed any actions towards Alabama; instead, the evidence

tends to show that an agency of the United States government directed its attention,

from its office in Mobile, Alabama, towards defendant.  Stated differently, defendant

did not direct its activities towards Alabama by accepting contracts that were issued

from the Mobile, Alabama office of the Army Corps of Engineers for construction

work that was to be performed outside of Alabama.  As such, the court finds that the

"purposeful-availment requirement" is not satisfied under the circumstances of this

case by defendant's receipt and performance of contracts from the Army Corps of Engineers, and that this defendant, a Florida corporation, certainly could not have expected to be haled into an Alabama court based on the acceptance of contracts that were to be performed entirely in Florida. *Id.*

In addition, it offends the notion of fair play to require an out-of-state entity to defend itself in an Alabama court when it agrees to perform work for the United States government in Florida, and that entity's only contact with Alabama is that the contract for that work was generated by the government through an office in Mobile, Alabama. *See Ruiz de Molina*, 207 F.3d at 1356 (holding that a court "must determine what these defendants did to purposefully avail themselves of the benefits of doing business in Alabama such that the notions of reasonableness and fairness are not offended by requiring them to defend themselves in an Alabama court").

Plaintiff also notes that defendant currently advertises, *via* its website, that it is capable of mobilizing its construction teams to complete projects in, among other places, "Southeast Alabama."[31]  Plaintiff's argument that defendant maintains the requisite minimum contact with Alabama based on information found on its website is not persuasive.  A purely informational website, such as that operated by defendant, lacks jurisdictional significance. *See GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) (cautioning that "personal

---

[31]Doc. no. 5, exhibit B.

jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District," and comparing access to a website to being "nothing more than a telephone call by a District resident to the defendants' computer servers"); *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (in "situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet . . . personal jurisdiction is not appropriate"); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997) (decrying efforts to predicate personal jurisdiction on operation of an essentially informational web page advertisement).    This court agrees with the following observation in *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056 (S.D. Ala. 2007):  "To hold otherwise would be to declare that [the] operation of a website . . . automatically subjects a company to general personal jurisdiction in every state of the Union . . . [and that] such a ruling would expand the notion of jurisdiction well beyond applicable constitutional parameters."  *Id.* at 1065 n.12 (citing *GTE New Media*, 199 F.3d at 1350 (stating that mere accessibility of websites in forum state constitutes minimum contacts "cannot hold water" because, "under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country"); *Cybersell*, 130 F.3d at 420 (commenting that such a ruling would

create a result in which every complaint arising from trademark infringement on the internet would give rise to personal jurisdiction wherever plaintiff's principal place of business was located, in contravention of traditional notions of what constitutes purposeful activity invoking benefits and protections of the forum state); *Snyder v. Dolphin Encounters Ltd.*, 235 F. Supp. 2d 433, 441 (E.D. Pa. 2002) ("If the contacts at issue here establish general personal jurisdiction, then any corporation with websites . . . would be subject to general jurisdiction in every state.")).

Assuming for the sake of argument that defendant's internet-based advertisement is tantamount to "continuous and systematic" contacts, the "notions of reasonableness and fair play" would, in this court's opinion, be compromised if this defendant were to be haled into an Alabama court, a forum in which it has not conducted any business activities for a number of years, based on this information alone. *Ruiz de Molina*, 207 F.3d at 1356. Defendant is merely advertising its ability or, perhaps, its willingness to perform work in Alabama, but there is a great difference between *seeking* to do business in Alabama and *actually transacting business* in the State.

In consideration of plaintiff's arguments, either individually or in the aggregate, the court finds that defendant does not maintain "continuous and systematic" contact with Alabama, and that the "notions of reasonableness and fair

play" would be unduly compromised if defendant were required to defend against a lawsuit in an Alabama court. *See id.* As such, this court concludes that general jurisdiction is lacking.

**B.    Specific Jurisdiction**

**1.    Minimum Contacts**

In contrast to general jurisdiction, "[s]pecific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *McGow v. McCurry*, 412 F.3d 1207, 1214 n.3 (11th Cir. 2005) (citation omitted). The exercise of personal jurisdiction on a specific jurisdiction theory is proper where a defendant's contacts with the forum state satisfy *all* of the following criteria:  (1) they are related or give rise to the plaintiff's cause of action; (2) they involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. *See, e.g., Sloss*, 488 F.3d at 925; *McGow*, 412 F.3d at 1214; *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).  That said, the court recognizes that a minimum contacts analysis is "immune to solution by checklist," and that such contacts must be viewed both quantitatively and qualitatively. *Sloss*, 488 F.3d at 925.

In the present case, this court is convinced that there is a legitimate question

16

as to whether defendant's contacts with Alabama are related or give rise to the plaintiff's cause of action.  However, the court need not reach that issue, which the parties have not discussed in great detail, because defendant has not committed an act by which it purposefully availed itself of the privilege of conducting activities in Alabama, nor were defendant's contacts within Alabama, related to plaintiff's cause of action, such that it could reasonably anticipate being haled into court here.  *See id.*

Defendant's contacts within Alabama related to this dispute consist of, at most, a few letters and telephone calls regarding failed contract negotiations with plaintiff. Those contacts are simply insufficient for an Alabama court to exercise personal jurisdiction over this defendant.  *See*, *e.g.*, *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996) (finding that making telephone calls from Canada into Florida did not amount to "conducting business" in Florida).  In *Steel Processors, Inc. v. Sue's Pumps, Inc.*, 622 So.2d 910, 914 (Ala. 1993), an Alabama-based claimant supplied materials and labor to repair a barge in Florida.  The contacts between the nonresident defendant and Alabama consisted of (a) a series of interstate telephone calls concerning the barge project, and (b) partial payments sent by the defendant into Alabama for the work.  Based on those facts, the Alabama Supreme Court held that the defendant's contacts with Alabama were insufficient for an Alabama court to exercise *in personam* jurisdiction over the out-of-state defendant.  *See id.* at 914.

Plaintiff further argues that specific jurisdiction is satisfied because plaintiff mobilized its workforce in Huntsville, Alabama, in order to commence work in Florida. Such an argument is likewise not persuasive where it was plaintiff that took the action of mobilizing its workforce. *See id.* Furthermore, this argument cuts against the Alabama Supreme Court's holding that "[t]he purchase of . . . services provided by a resident corporation of a forum state . . . does not alone provide the requisite 'minimum contacts' for exercise of personal jurisdiction within the bounds of due process." *Steel Processors, Inc.*, 622 So. 2d at 913-14.

To summarize, the "minimum contacts" requirement for the exercise of specific jurisdiction is not met in this case. As such, plaintiff's argument that this court must extend specific personal jurisdiction over defendant fails.

### 2.     Fair Play and Substantial Justice

Of course, a finding of minimum contacts would not conclude the personal jurisdiction analysis in and of itself; rather, personal jurisdiction can only be exercised over a party having minimum contacts with the forum if doing so would not offend traditional notions of fair play and substantial justice. *See Robinson*, 74 F.3d at 259 ("Minimum requirements of fair play and substantial justice may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities.") (citation omitted). This analysis weighs

such factors as the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering fundamental substantive social policies.  *See McGow*, 412 F.3d at 1216; *Mutual Service Ins. Co. v. Frit Industries, Inc*., 358 F.3d 1312, 1320 (11th Cir. 2004); *Meier*, 288 F.3d at 1276.

Even assuming that defendant maintained the "minimum contacts" necessary to establish specific jurisdiction (which it did not), it strains the imagination to conceive that bringing this defendant into an Alabama court could be considered fair. As noted in the beginning of this opinion, it was plaintiff, and not defendant, that initiated the relationship between these two entities, began work on the Crestview Elementary School project *in Florida*, rejected the subcontract terms proposed by defendant, and, subsequently, stopped work.  *See Ruiz de Molina*, 207 F.3d at 1356 ("No plaintiff can establish jurisdiction over a defendant through his own actions."). Furthermore, the overwhelming majority of events pertinent to the parties' dispute took place in Florida.

More specifically, the relevant factors this court must consider favor a finding that fair play and substantial justice are hindered in this case.  *See McGow*, 412 F.3d at 1216.  Defendant has demonstrated that it would be greatly burdened if this action

were to remain before this court, in that all of its files and potential witnesses with respect to this lawsuit are located in Florida.  Further, while Alabama courts certainly have an interest in adjudicating a breach of contract controversy involving one of its citizens, there is no compelling interest here, where plaintiff reached out to a Florida corporation, soliciting work to be performed in Florida, and where plaintiff now seeks to bring a lawsuit against that Florida entity in an Alabama court.  In addition, in light of plaintiff's argument that it would be greatly inconvenienced should it be forced to litigate this dispute in Florida, the court finds it curious that plaintiff actively sought to travel to Florida in order to perform work on the Crestview Elementary School project.

The parties have not spoken to the issues of judicial efficiency, or the states' shared interest in furthering fundamental substantive social policies, and this court will not give pause to consider the arguments that might have been raised, except to note that neither principle will be adversely affected if this case proceeds in a Florida court.

In short, independent of the court's finding that defendant does not maintain the minimum contacts necessary to establish specific personal jurisdiction in Alabama, the interests of fairness bar the court from asserting specific personal jurisdiction over this defendant.

### III.  CONCLUSION

Consistent with the foregoing, this court lacks personal jurisdiction over defendant.  Accordingly, defendant's motion to dismiss is due to be GRANTED, and this action will be dismissed without prejudice.  A separate order will be entered in accordance with this memorandum opinion.

DONE this 30th day of July, 2008.

_____
United States District Judge